# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORGAN TRUCK BODY, LLC, | : | CIVIL ACTION |
| d/b/a MORGAN CORPORATION | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 07-1225 |
| | : | |
| INTEGRATED LOGISTICS | : | |
| SOLUTIONS, LLC, et al., | : | |
| Defendants | : | |

## M E M O R A N D U M

STENGEL, J.                                                    March   20, 2008

This is a diversity contract action originally brought in the Court of Common Pleas of Berks County, and properly removed here.  In its Amended Complaint,[1] the plaintiff brought four claims against the defendants for breach of contract, breach of implied in-fact contract, breach of implied covenant of good faith and fair dealing, and tortious interference with contractual relations.  The defendants have filed a motion to dismiss all four claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, I will grant the motion in part, and deny it in part.

---

[1]  The defendants filed their first motion to dismiss the plaintiff's original complaint on March 27, 2007.  In response, the plaintiff filed an Amended Complaint on April 11, 2007.  Thus, I will deny that motion to dismiss (Document #2) as moot.

## I. BACKGROUND[2]

Plaintiff Morgan Truck is a company engaged in designing, manufacturing, marketing, selling, and servicing truck bodies.  The "Integrated Logistics Solutions" defendants are three related companies[3] in the business of sourcing, planning, implementing and managing the physical flow of specialty production components to manufacturing companies and distributors.  Before being purchased by ILS Acquisition, Defendant Purchased Parts Group was a corporation in the business of providing supply chain management services for production components.

On January 1, 2002, Morgan entered into a two-year contract with Purchased Parts for the supply of fasteners.  See Amended Complaint at ¶ 14.  Pursuant to the contract, the agreement would remain in effect for two years, and further renewal would require formal notice and terms agreed to by both parties ninety days prior to expiration.  Id. at ¶ 15.  Upon termination, Purchased Parts would be required to supply sixty days' average usage of standard parts and ninety days' average usage of non-standard parts to Morgan.  Id. at ¶ 17.

On October 20, 2003, Randy Ladutko, Vice President of Sales & Marketing for Purchased Parts, sent a "Memorandum of Understanding" to Dusan Iovanov, the

---

[2] All facts are taken from the plaintiff's Amended Complaint and the extrinsic documents upon which it is based.  For purposes of this motion, the facts are accepted as true with all reasonable inferences drawn in favor of the plaintiff as the non-moving party.

[3] In December 2006, Defendant ILS Acquisition, LLC, merged with and into Defendant Integrated Logistics Holding Company.

Commodity Manager at Morgan, which stated that Purchased Parts was "basically in agreement with the terms of the contract" as well as the fact that "the new pricing structure which reflects the 8 1/4 reductions will go into effect January 1, 2004."  After the contract expired on January 1, 2004, Purchased Parts continued to supply fasteners to Morgan in lieu of a formalized written contract extension through the summer of 2005. Id. at ¶ 19.

In July 2005, Defendant ILS Acquisition, a subsidiary of Defendant Integrated Logistics Solutions, bought the assets of Purchased Parts for $9 million and the assumption of trade liabilities.  Id. at ¶ 20.  According to the terms of the purchase contracts, ILS Acquisition succeeded to Purchased Parts' right, title and interest in and to the Purchased Parts-Morgan supply contract.  Id. at ¶¶ 21-22.

On August 2, 2005, Mr. Ladutko, now of Integrative Logistics,[4] sent a proposal to Randy Jenkins, Director of Purchasing for Morgan, for a formal contract extension to continue to support Morgan's fastener requirements.  Id. at ¶ 29.  On September 13, 2005, Mr. Jenkins responded via e-mail that Morgan intended to terminate its relationship with Integrated Logistics on November 21, 2005.  Id. at ¶ 30.  Mr. Jenkins acknowledged that Integrated Logistics would still have dedicated Morgan hardware in stock.  Thus, in order to accomplish a smooth transition to a new supplier of fasteners, Mr. Jenkins offered to purchase approximately twelve weeks of inventory, and indicated that Morgan would

---

[4] See Amended Complaint, Exhibit F.

3

consider taking additional quantities on a part by part basis. Id. at ¶ 31. These offers were contingent upon Integrated Logistics providing Morgan's hardware requirements until November 21, 2005.

On September 19, 2005, Mr. Ladutko responded that Integrated Logistics had attempted to cancel requirements where possible, and would continue its efforts to mitigate open order commitments. Id. at ¶ 32. He indicated that his company's agreement to continue to support Morgan's plant requirements was contingent upon Morgan's signing an inventory purchase agreement.[5] Further, Mr. Ladutko stated that if the agreement was not signed by the following day, his company would withhold all shipments and services to Morgan. Id.

On September 20, 2005, Mr. Iovanov of Morgan responded to the proposal with a list of modifications. Id. at ¶ 34. He also indicated that because a substantial number of parts could be sold to other customers, it would be unfair to ask Morgan to purchase them. Mr. Jenkins of Morgan also responded to Integrated Logistics' proposal by outlining Morgan's specific modifications to the proposed agreement. Id. at ¶ 35.

Morgan indicates in its Amended Complaint that it continued to negotiate in good

---

[5] This agreement required Morgan to: (1) purchase all on-hand product by wire-transfer of immediately available funds by September 23, 2005; (2) purchase open order commitments by wire-transfer of immediately available funds by October 20, 2005; (3) pay outstanding balances, without discount or set offs, by wire-transfer of immediately available funds in full no later than September 23, 2005; (4) pay all remaining outstanding amounts for products shipped prior to the effective date of the agreement by wire-transfer of immediately available funds no later than October 7, 2005; and (5) provide an irrevocable standby letter of credit in the amount of $2.3 million and containing specific draw provisions. See Amended Complaint at ¶ 33.

faith to modify the agreement with Integrated Logistics and attempted to purchase all open order commitments by November 21, 2005.  Id. at ¶ 36.  Morgan claims, however, that Integrated Logistics negotiated in bad faith and attempted to coerce Morgan into purchasing all inventory, including standard inventory that could be sold to other customers, as well as expediting Integrated Logistics' payment terms.  Id. at ¶ 37.  No agreement was reached.

Morgan further asserts that after the parties ended these negotiations, Integrated Logistics intentionally, unilaterally, and in bad faith ceased deliveries of critical component parts in breach of the supply contract in a deliberate attempt to harm Morgan. Id. at ¶ 39.  Integrated Logistics subsequently attempted to corner the market of critical component parts from its suppliers, including monobolts, special fasteners, and rubber bumpers, intending to interrupt or shut down Morgan's business operations.  Id. at ¶¶ 39-40.  Integrated Logistics held on to active purchase orders with Avdel/Textron, the only manufacturer of monobolts needed for Morgan's production line; held on to its active purchase orders with Engineered Components, the company that manufactured special fasteners needed for Morgan's production line; and allowed its purchase orders with Diamond Rubber, the company that manufactured rubber bumpers needed for Morgan's production line, to lapse and further cancelled its active purchase orders with Diamond Rubber in order to shut down Morgan's production line.  Id. at ¶¶ 41-47.  Morgan asserts that these actions were taken by Integrated Logistics for the sole purpose of forcing

5

Morgan to pay unreasonable costs, e.g., expedited freight charges from other suppliers, and to shut down Morgan's production line.  Id.

Morgan finally asserts that Integrated Logistics intentionally and recklessly interfered with Morgan's contractual relationship with Morgan's Authorized Distributors, and other customers of Morgan, including Penske, Ryder, and Lowes, through improper means and with reckless disregard of the consequences of their actions.  Id. at ¶ 48.


## II.  STANDARD FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-312 (3d Cir. 1999).  Under Rule 12(b)(6), a pleading should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue, therefore, is not whether the non-moving party will ultimately prevail, but whether it is entitled to offer evidence to support its claims.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a pleading should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the pleading and accept all of the allegations as true, drawing all reasonable inferences in favor of the non-moving party.  ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the pleading, exhibits attached to the pleading, matters of public record, and documents that form the basis of a claim).

## III.  DISCUSSION

### A.      Motion to Dismiss

#### 1.  Counts I and II – Breach of Contract and Breach of Implied-in-fact Contract

In Count I of its Amended Complaint, Morgan alleges breach of contract, and in Count II it alleges breach of implied-in-fact contract.  The defendants have moved for the dismissal of Count I on the grounds that the written contract between the parties expired on January 1, 2004, and the dismissal of Count II on the grounds that no such contract existed.

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege:  (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.  Ware v. Rodale Press, Inc., 322 F.3d

7

218, 225 (3d Cir. 2003) (citing <u>CoreStates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058

(Pa. Super. Ct. 1999)).  When deciding a motion to dismiss, a court "need not credit either

'bald assertions' or 'legal conclusions' in a complaint."  <u>Evancho v. Fisher</u>, 423 F.3d 347,

351 (3d Cir. 2005).  While a complaint need not include evidentiary detail, the plaintiff

has to "allege a factual predicate concrete enough to warrant further proceedings."  <u>See</u>

<u>Chemtech Int'l v. Chem. Injection Techs.</u>, 170 Fed. Appx. 805, 808 (3d Cir. 2006) (citing

<u>DM Research, Inc. v. Coll. Of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999)).

Here, the Amended Complaint sufficiently pleads claims for breach of contract.

First, it alleges that a contract existed between the parties for the supply of goods for a

two-year period beginning in January 2002, and that the parties continued to operate

under that contract for the two-year period and beyond.  When parties continue to conduct

business following the expiration of their written agreement, however, the law may

recognize their relationship as an "implied-in-fact" contract.  <u>Luden's Inc. v. Local</u>

<u>Union</u>, 28 F.3d 347, 355 (3d Cir. 1994) (general principles of contract law teach us that

when a contract lapses, but the parties to the contract continue to act as if they are

performing under a contract, the material terms of the prior contract will survive intact

unless the parties intend otherwise).

Under Pennsylvania law, "an implied-in-fact contract is a true contract arising

from mutual agreement and intent to promise, but where the agreement and promise have

not been verbally expressed.  The agreement is inferred from the conduct of the parties."

In re Penn Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987) (citations omitted).  The

comment to Section 4 of the Restatement (Second) of Contracts, adopted in Pennsylvania,

explains:

> Contracts are often spoken of as express or implied. The
> distinction involves, however, no difference in legal effect,
> but lies merely in the mode of manifesting assent. Just as
> assent may be manifested by words or other conduct,
> sometimes including silence, so intention to make a promise
> may be manifested in language or by implication from other
> circumstances, including course of dealing or usage of trade
> or course of performance.

Restatement (Second) of Contracts § 4 cmt. a; see also Rissi v. Cappella, 918 A.2d 131,

140 (Pa. Super. 2007) (implied contracts arise under circumstances which, according to

the ordinary course of dealing and the common understanding of men, show a mutual

intention to contract).  Here, when the formal written contract expired, the parties

continued to operate pursuant to the terms of the supply contract, according to the

ordinary course of dealing and standard industry practice.  Thus, whether the contract

pled in the instant complaint is express or implied-in-fact is not controlling for purposes

of this motion.  The legal effect of an implied-in-fact contract is the same as that of an

express one.

Second, the complaint alleges the breach of a duty imposed by the contract.

Morgan and Purchased Parts had agreed that upon termination of the contract, Purchased

Parts would be required to supply sixty days' usage of standard parts and ninety days'

usage of non-standard parts to Morgan.  As part of its Purchase Agreement with

Purchased Parts, ILS Acquisition assumed the Morgan Supply Contract.  The complaint alleges that, notwithstanding this provision of the contract, Integrated Logistics in bad faith ceased deliveries of critical component parts in breach of the supply contract.  This was done, the complaint alleges, in a deliberate attempt to harm Morgan's business.

Finally, the complaint alleges that this breach of a duty resulted in damages to Morgan.  Thus, with all of the elements for breach of contract sufficiently pled, I will deny the defendants' motion to dismiss Count I and Count II from the Amended Complaint.[6]

### 2.  Count III – Breach of Implied Covenant of Good Faith and Fair Dealing

Morgan insists that Pennsylvania's Commercial Code and the contract at issue here direct that the defendants owed Morgan a duty of good faith in performance.  See 13 Pa.C.S.A. § 1203.  It further asserts that, notwithstanding that duty, the defendants failed to act honestly through their continued conduct of knowingly intending to stop Morgan's production line.  Such conduct, Morgan argues, constitutes a breach of the obligation of good faith and fair dealing.  The defendants argue that this claim should be dismissed because Pennsylvania does not recognize this theory as an independent cause of action.

---

[6]  I am aware that the expiration date of the original contract was January 1, 2004, according to its explicit terms.  While it would seem that Count I could be dismissed, it is premature to do so at this stage of the proceedings.  It is possible that the parties continued to operate under the contract beyond January 1, 2004.  The limited record before me suggests that the parties may have implicitly extended the contract.  The dismissal of Count I or Count II can still be addressed in dispositive motions after discovery.

In Pennsylvania, a covenant of good faith and fair dealing is implied in every contract.  Pennsylvania has adopted the concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.  Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 153 (Pa. Super. Ct. 1989).  The weight of authority provides, however, that Pennsylvania law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate and apart from a claim for breach of contract. Bagasra v. Thomas Jefferson Univ., 1999 U.S. Dist. LEXIS 10939, at *1 (E.D. Pa. July 20, 1999) (dismissing an implied covenant claim where the plaintiff stated a separate claim for breach of contract); see also McAllister v. Royal Caribbean Cruises, Ltd., 2003 U.S. Dist. LEXIS 24287, at *4 (E.D. Pa. Sept. 30, 2003) (under Pennsylvania law, a covenant of good faith and fair dealing is implied in every contract and Pennsylvania does not recognize a separate claim for breach of implied covenant of good faith and fair dealing); see also Lyon Fin. Servs. v. Woodlake Imaging, LLC, No. 04-3334, 2005 U.S. Dist. LEXIS 2011, * 21 (E.D. Pa. Feb. 9, 2005) (Pennsylvania law does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing).  In fact, the Third Circuit has held that a party may not maintain separate claims for breach of contract and breach of covenant of good faith and fair dealing where both causes of action arise out of the same conduct by the defendant.  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701-02 (3d Cir. 1993).

11

Therefore, in order to survive this motion to dismiss, Morgan need only plead the elements of a cause of action for breach of contract as described above.  Because Morgan has successfully pled those elements, I find that a separate count for breach of an implied covenant of good faith and fair dealing is superfluous.  I will grant the defendants' motion to dismiss Count III of the Amended Complaint.

### 3.  Count IV – Tortious Interference with Contractual Relationships

The Amended Complaint asserts that the defendants breached the contract by failing to continue to supply Morgan with critical component parts, and that they thereafter interfered with Morgan's contractual relationships with its authorized distributors and customers through improper means, e.g., attempting to corner the market of critical component parts with the intent to interrupt and/or shut down Morgan's business operations.  The defendants argue that this claim fails because there is no allegation that any of the defendants interfered with the ability of a third-party to perform a contract with Morgan.

Pennsylvania courts analyze claims for intentional interference with contract under Section 766 of the Restatement (Second) of Torts.  See Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n, 856 F. Supp. 910 (E.D. Pa. 1994); see also Windsor Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 659 (3d Cir. 1993) (citing Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1181-83 (1978).  Section 766 provides that:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contact, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Section 766 "addresses disruptions caused by an act directed not at the plaintiff, but at a third person:  the defendant causes the promisor to breach its contract with the plaintiff." Windsor Securities, 986 F.2d at 660.  As noted above, Morgan alleges that Integrated Logistics intentionally and recklessly interfered with Morgan's contractual relationship with Morgan's Authorized Distributors, and other customers of Morgan, including Penske, Ryder, and Lowes, through improper means and with reckless disregard of the consequences of their actions.  See Amended Complaint at ¶ 48.  Contrary to the argument of the defendants, Morgan has asserted that the defendants directed their alleged activities at third parties, in an effort to have those parties breach their contracts with Morgan.  These allegations are sufficient at this early stage of the proceedings to state a claim for tortious interference with contractual relationships against the defendants.  Therefore, I will deny the defendants' motion to dismiss Count IV of the plaintiff's Amended Complaint.

### B.    Morgan's Motion for Alternative Service

Morgan requests that I allow alternative service of process by regular mail pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 430 of the

13

Pennsylvania Rules of Civil Procedure.  Due process requires that service of process be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Calabro v. Leiner, 464 F. Supp. 2d 470, 471 (E.D. Pa. 2006) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  Alternative service is a remedy of "last resort," and is only appropriate when service under the applicable rules of civil procedure cannot be made.  See Grove v. Guilfoyle, 222 F.R.D. 255, 256 (E.D. Pa. 2004). According to Federal Rule of Civil Procedure 4(e), service may be effected pursuant to the law of the state in which the district court is located.  Pennsylvania Rule of Civil Procedure 430(a) provides that if service cannot be made under the applicable rules, "the plaintiff may move the court for a special order directing the method of service."  The rule requires that any such motion be accompanied by an affidavit "stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made."  Pa. R. Civ. P. 430(a); see also Johnson v. Jackson, 2004 U.S. Dist. LEXIS 463, at *1 (E.D. Pa. Jan. 6, 2004).

In order to demonstrate that the remedy of alternative service is appropriate, a plaintiff must satisfy three conditions: (1) the plaintiff must make a good faith effort to locate the defendant; (2) the plaintiff must show that it has made practical efforts to serve the defendant under the circumstances; and (3) the plaintiff's proposed alternative means of service "must be reasonably calculated to provide the defendant with notice of the

proceedings against him." <u>Premium Payment Plan v. Shannon Cab Co.</u>, 2007 U.S. Dist. LEXIS 58886, at *2 (E.D. Pa. Aug. 13, 2007).

Here, the first two conditions have been satisfied.  Morgan has previously attempted to serve Purchased Parts.  In fact, it attached an affidavit to its motion for alternative service outlining its attempts to effectuate service of the Amended Complaint to Purchased Parts.  On March 7, 2007, Morgan sent Purchased Parts a time-stamped copy of the complaint and notice to defend filed in the Court of Common Pleas of Berks County <i>via</i> certified mail and first-class mail.  The post office returned the certified mail and marked the envelope "Not Deliverable as Addressed, Unable to Forward."

On April 12, 2007, Morgan sent Purchased Parts a time-stamped copy of the Amended Complaint and two copies of the Waiver of Service of Summons <i>via</i> certified mail and first-class mail.  The post office returned only the certified mail and marked the envelope "Attempted, Not Known."

Also attached to the motion were copies of documents resulting from internet searches in an attempt to determine whether Purchased Parts is still a viable corporation. Morgan asserts that Purchased Parts is currently listed as an active corporation on the Pennsylvania Department of State Corporation Bureau website, and on Michigan's Corporate Entity Details website.[7]  Morgan insists that this is evidence that Purchased

---

[7] Similar searches performed by my staff were unsuccessful.  Purchased Parts' website has been disabled, its telephone numbers have been disconnected, and the websites of various states' Departments of State reveal that Purchased Parts is no longer an active corporation in those

(continued...)

Parts has not yet been dissolved despite the fact that ILS Acquisition purchased all of Purchased Parts' assets in July 2005.  Morgan suspects that Purchased Parts is aware of the lawsuit, and is consciously avoiding service of process.

Thus, Morgan insists, the method of service which has the greatest likelihood of placing Purchased Parts on actual notice of the existence of this lawsuit is by regular mail at Purchased Parts' principal place of business at 2700 Summer Avenue, Memphis, Tennessee.  However, since Morgan has already attempted, unsuccessfully, to serve Purchased Parts *via* regular mail at that address, its last known one, its proposed alternative method of service cannot be deemed reasonably calculated to provide Purchased Parts with notice of the proceedings against it.  I will deny Morgan's motion for alternative service.

Accordingly, an appropriate Order follows.

---

[7](...continued)
states.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MORGAN TRUCK BODY, LLC,** | : | **CIVIL ACTION** |
| **d/b/a MORGAN CORPORATION** | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **07-1225** |
| | : | |
| **INTEGRATED LOGISTICS** | : | |
| **SOLUTIONS, LLC, et al.,** | : | |
| **Defendants** | : | |

**O R D E R**

**AND NOW,** this   20th  day of March, 2008, upon consideration of the

defendants' motion to dismiss (Document #6), and the plaintiff's response thereto

(Document #9), IT IS HEREBY ORDERED that:

1.     The motion to dismiss is GRANTED in part and DENIED in part;

2.     Count III of the Amended Complaint is DISMISSED;

3.     Defendants' original motion to dismiss (Document #2) is DENIED as moot;

4.     The plaintiff's motion for alternative service (Document #10) is DENIED.


BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.